Timothy Hargrove v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-207-CR

Â Â Â Â Â TIMOTHY HARGROVE,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 82nd District Court
Falls County, Texas
Trial Court # 7674
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Timothy Hargrove was arrested under a felony warrant for delivery of marijuana. He was
taken to the police department where officers found crack cocaine in his hand. After interviewing
Hargrove, officers attempted to take him to jail. While walking from the front door of the police
department to the police car, Hargrove, still handcuffed, broke and ran, but he was quickly
apprehended. He was indicted under section 38.06 of the Penal Code: escape from custody while
under arrest for a felony. Tex. Pen. Code Ann. Â§ 38.06(a)(1), (c)(1) (Vernon 2003). The
indictment alleged that the felony was possession of cocaine. A jury convicted him and assessed
punishment at fifteen years in prison. On appeal, Hargrove complains:
Â Â Â Â Â Â a.Â Â Â The evidence is legally and factually insufficient, because it shows that he was under
arrest only for delivery of marijuana, but the indictment and jury charge refer only to
possession of cocaine.
Â 
Â Â Â Â Â Â b.Â Â Â The trial court erred by excluding the testimony of two defense witnesses who would
have testified in support of a ânecessityâ defenseâhe claimed he broke and ran out of
fear the officers would harm him.

We will affirm the judgment.
Sufficiency of the Evidence
Â Â Â Â Â Â Hargrove argues that the State did not prove he was arrested for possession of cocaine as
alleged in the indictment and required by the jury charge. Proof of this element came primarily
from Officer Honeycutt, one of the officers who served the warrant. He testified on direct
examination that, after they arrived at the police station, he found crack cocaine in a plastic baggie
in Hargroveâs hand. âWhat did you do after discovering that?â âI placed Mr. Hargrove under
arrest for the possession of crack cocaine.â Later in his direct testimony: âAnd you had placed
him under arrest for the possession of a controlled substance?â âAt the police department when
I found it.â On cross-examination, this exchange occurred: âHow did you go about placing him
under arrest for the cocaine?â âI told him he was going to be charged with possession of crack
cocaine. He would have an additional charge of crack cocaine added to the charge.â Honeycutt
also testified that later, when Hargrove was taken to jail, he was charged with â[d]elivery of
marijuana, felony delivery of marijuana, which we were originally over at the motel for,
possession of a controlled substance, and felony escape.â Honeycutt said that, at the jail, he filled
out an affidavit for a warrantless arrest for possession of cocaine. âThat is procedure to do it at
the jail.â
Â Â Â Â Â Â Hargrove, however, relies on what Officer Trussell said on a tape. After Honeycutt found
the cocaine, and allegedly arrested Hargrove for possession of it, a tape-recorded interview of
Hargrove was conducted, still at the police department. At the beginning of the tape, which was
played to the jury, Trussell said: âIt is 11:20 p.m. â I am Brian Trussell with the Rosebud Police
Department. Tim, before we go any further, you are under arrest for possession â correction,
delivery of marijuana, a State Jail felony. Also, when you came in here you were found to have
on your person a controlled substance, believed to be crack cocaine in your right hand by Officer
Honeycutt.â Trussell also testified at trial. He said that he witnessed Hargrove find the cocaine. 
In addition, he said that after the tape was turned off, Hargrove and the officers had a discussion
about whether the cocaine-possession charge could be dealt with by Hargrove becoming an
undercover informant.
Â Â Â Â Â Â Officer Anastasio testified about the discussion regarding Hargrove becoming an informant. 
âMr. Hargrove requested that I speak with the District Attorneyâs office . . . for some type of deal
on his charges. I donât believe we discussed not filing the cocaine charge on him. He was filed
â he was told he was filed on possession of crack cocaine that was found on him, and that he was
going to jail that night.â
Â Â Â Â Â Â Hargrove testified that Honeycutt planted the cocaine in his hand. He said he never thought
he was under arrest for the cocaine charge, only for the marijuana charge. He confirmed the
conversation with the officers about working out a way to deal with the cocaine charge. He also
said that on the way out of the police department, Trussell said to him: â[Y]ouâre a real a - - hole.
. . . [W]eâre going to take you for a hell of a ride.â He thought the officers âhad it in for me,â
and he was frightened about what they might do to harm him.
Legal Sufficiency
Â Â Â Â Â Â In reviewing a challenge to the legal sufficiency of the evidence, we do not weigh favorable
and non-favorable evidence. Margraves v. State, 34 S.W.3d 912, 917 (Tex. Crim. App. 2000)
(citing Cardenas v. State, 30 S.W.3d 384 (Tex. Crim. App. 2000)). Rather, we view all the
evidence in the light most favorable to the verdict and determine whether a rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. Burden v.
State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); Lane v. State, 933 S.W.2d 504, 507 (Tex.
Crim. App. 1996) (citing due process standard from Jackson v. Virginia, 443 U.S. 307, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979)). We consider both direct and circumstantial evidence as well as
evidence improperly admitted. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993);
Logan v. State, 48 S.W.3d 296, 299 (Tex. App.âTexarkana 2001), affâd, 89 S.W.3d 619 (Tex.
Crim. App. 2002). The judgment may not be reversed unless it is irrational or unsupported by
proof beyond a reasonable doubt. Matson v. State, 819 S.W.2d 839, 846-47 (Tex. Crim. App.
1991) (citing Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)); In re A.C., 48
S.W.3d 899, 903 (Tex. App.âFort Worth 2001, pet. denied).
Â Â Â Â Â Â Reviewing the testimonies of Honeycutt, Trussel, Anastasio, and Hargrove in the light most
favorable to the verdict, we find that a rational jury could have found beyond a reasonable doubt
that Honeycutt arrested Hargrove at the police department for possession of cocaine. Burden, 55
S.W.3d at 612. The finding was not irrational or unsupported by proof beyond a reasonable
doubt. Matson, 819 S.W.2d at 846-47.
Factual Sufficiency
Â Â Â Â Â Â In reviewing a challenge to the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. See Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997). We must view all the evidence without the prism of the âin the light
most favorable to the prosecutionâ construct. See Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996). We ask âwhether a neutral review of all the evidence, both for and against
the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the juryâs determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof.â Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000);
Zuliani v. State, (Tex. Crim. App. Feb. 2, 2003); see also Goodman v. State, 66 S.W.3d 283, 285
(Tex. Crim. App. 2001).
Â Â Â Â Â Â We must also remain cognizant of the factfinderâs role and unique positionâone that the
reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The jury determines the
credibility of the witnesses and may âbelieve all, some, or none of the testimony.â Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). It is the jury that accepts or rejects
reasonably equal competing theories of a case. Goodman, 66 S.W.3d at 287. A decision is not
manifestly unjust as to the accused merely because the factfinder resolved conflicting views of
evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).
Â Â Â Â Â Â Honeycutt testified in response to several questions that he arrested Hargrove for possession
of cocaine. Hargrove said he believed he was under arrest only for the marijuana charge, but he
was never asked if Honeycutt told him he was being arrested for the cocaine charge. And
although Trussell began the tape referring only to the arrest for the marijuana charge, the
significance of that omission is reduced by his testimony that there was a discussion about dealing
with the cocaine charge by Hargrove becoming an informant. Finally, Anastasio testified that
Hargrove âwas told he was filed on possession of crack cocaine that was found on him, and that
he was going to jail that night.â Considering all the evidence, and deferring to the jury for
credibility determinations, we do not find that the evidence âdemonstrates that the proof of [the
finding] is so obviously weak as to undermine confidence in the juryâs determination, or the proof
of [the finding], although adequate if taken alone, is greatly outweighed by contrary proof.â 
Johnson, 23 S.W.3d at 11.
Conclusion
Â Â Â Â Â Â The evidence is legally and factually sufficient to support a finding that Honeycutt arrested
Hargrove for possession of cocaine, and that the arrest occurred before the escape. We overrule
the sufficiency-of-the-evidence issues.
Necessity Defense
Â Â Â Â Â Â Hargrove proffered two employees from the county jail from whom he wanted to adduce
testimony that, while being held at the jail, he had been allowed outside the locked premises,
unshackled and sometimes unsupervised, to perform work duty, and he had not tried to escape. 
He argued that the testimonies would (1) support his ânecessityâ defense by showing that his
âintentâ in escaping from the officers was only to avoid being harmed by them, and (2) rebut
testimony of his âintentâ to escape to avoid incarceration, which was elicited from him by the
State during his testimonyâunobjected toâabout three prior incidents in which he ran from
police. âNecessityâ is a justification for otherwise criminal conduct.
Â Â Â Â Â Â Conduct is justified if:
Â 
(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent
harm;
(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary
standards of reasonableness, the harm sought to be prevented by the law proscribing the
conduct; and
(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise
plainly appear.
Tex. Pen. Code Ann. Â§ 9.22 (Vernon 2002). The trial court did not allow the witnesses to
testify. The court did, however, allow the defense, and there were appropriate instructions in the
jury charge.
Â Â Â Â Â Â We review a trial courtâs decision to admit or exclude evidence for whether there is an abuse
of discretion, i.e., for whether the trial judge's decision lies âwithin the zone of reasonable
disagreement.â Rachal v. State, 917 S.W.2d 799, 816 (Tex. Crim. App. 1996); Rankin v. State,
974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (citing Montgomery v. State, 810 S.W.2d 372, 391
(Tex. Crim. App. 1990) (opinion on rehâg)).
Â Â Â Â Â Â Hargrove first argues that his âcharacter for trustworthinessâ was at issue, and he was entitled
to present evidence of it. Tex. R. Evid. 404(a)(1)(A). Without deciding whether âcharacter for
trustworthinessâ was at issue, we note that he agrees that character evidence must be in the form
of reputation or opinion evidence, which was not the form of the testimony of his two witnesses. 
Tex. R. Evid. 405(a); Brief of Appellant p. 23. Therefore, the trial court did not abuse its
discretion in excluding the witnesses for this reason.
Â Â Â Â Â Â Hargrove next argues that the witnesses would have supported his ânecessityâ defense by
showing that his âintentâ in escaping was only to avoid being harmed by the officers. Tex. R.
Evid. 404(b); Tate v. State, 981 S.W.2d 189, 193 (Tex. Crim. App. 1998) (the defendant, not
solely the State, may rely on Rule 404(b)); Gonzales v. State, 2 S.W.3d 600, 605 (Tex.
App.âTexarkana 1999, pet. refâd) (defendant may rely on 404(b) to prove his intent to self-defend). He says that, had his âintentâ in escaping from the officers been to avoid incarceration,
rather than to avoid being harmed by them, he would have also tried to escape at the jail when he
had the opportunity. We agree with Hargrove that there is a logical relationship between his
failure to try and escape from the jail and the âintentâ aspect of his ânecessityâ defense. Thus the
trial court abused its discretion in not allowing the testimonies on this basis.
Â Â Â Â Â Â Finally, Hargrove argues that the witnesses would have provided evidence of his âintentâ to
avoid immediate harm which would have rebutted the Stateâs evidence of three previous incidents
in which he ran from police. Tex. R. Evid. 404(b); Tate, 981 S.W.2d at 193; cf. Webb v. State,
36 S.W.3d 164, 180 (Tex. App.âHouston [14th Dist.] 2000, pet. refâd) (State may rebut
defensive theory with Rule 404(b) evidence) (citing Ransom v. State, 920 S.W.2d 288, 301 (Tex.
Crim. App. 1996) (opinion on rehâg)). These three incidents created an inference that enhanced
the Stateâs allegation that Hargrove escaped not from fear of harm but from fear of incarceration. 
We agree with Hargrove that the inference to be drawn from the witnessesâ testimonies about his
âintentâ tends to rebut the inference drawn from the Stateâs adducing the prior incidents of flight. 
Thus the trial court also abused its discretion in not allowing the testimonies on this basis.
Â Â Â Â Â Â Having found error, we must review for âharm.â We will disregard any error that does not
affect a substantial right of the complaining party. Tex. R. App. P. 44.2(b). "A substantial right
is affected when the error had a substantial and injurious effect or influence in determining the
jury's verdict." King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos
v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). We do not
reverse if, "after examining the record as [a] whole, [we have] fair assurance that the error did not
influence the jury, or had but a slight effect.â Johnson v. State, 967 S.W.2d 410, 417 (Tex.
Crim. App. 1998); see also Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). The
reviewing court should consider everything in the record, including all the evidence admitted, the
closing arguments, and voir dire. Motilla v. State, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002). 
The strength of the evidence of guilt, especially if it is overwhelming, is a factor to be considered. 
Id. at 357-58.
Â Â Â Â Â Â The testimonies of the witnesses who were excluded would have supported Hargroveâs
ânecessityâ defense, because the defense depended on convincing the jury that he escaped not to
avoid incarceration but to avoid being harmed by the officers. The testimonies, however, would
not have been dispositive of that inquiry. Also part of the inquiry is that, on three previous
occasions, Hargrove ran from police, and that he was, at the time of the escape, under arrest for
two felonies. In addition, his credibility as a witness was at issue, and that is a matter for the jury
which heard him testify that he had been to prison previously after being convicted in 2000 of
possession of cocaine. Furthermore, Hargrove was not prevented from raising his ânecessityâ
defense which was included in the jury charge and which he argued extensively in closing
argument. Finally, there was ample evidence that he committed the offense. Therefore, we
conclude "after examining the record as [a] whole, [that we have] fair assurance that the error did
not influence the jury, or had but a slight effect.â Johnson, 967 S.W.2d at 417.
Â Â Â Â Â Â We overrule these issues.
Conclusion
Â Â Â Â Â Â Having overruled Hargroveâs issues, we affirm the judgment.
Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BILL VANCE
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Gray
Â Â Â Â Â Â (Justice Gray concurring)
Affirmed
Opinion delivered and filed July 30, 2003
Do not publish
[CR25]



he royalty interest in the
deed could inure only to the benefit of the owner, I.A. McKee.  Such
reservation or exception did not amount to a gift to Mrs. McKee of a portion of
such excepted or reserved royalty interest.Â  The only way for I.A. McKee to
have made a gift to Mrs. McKee of an interest in his separate property would
have been by the execution of a deed.Â  See Art. 1288, V.A.C.S.Â  Also see 27 Tex. Jur. 2d Gift, Sec. 30, wherein it is stated: ÂThe only
method of concurrently giving an estate in land and perfecting the gift is by a
deed conveying the property to the donee.ÂÂ  Since I.A. McKee never executed
such a deed to Mrs. McKee she never acquired any interest in the royalty in
question by gift or in any other manner under the facts in this case.

Â 

Id. at
875-76 (some citations omitted).

Â Â Â Â Â Â Â Â Â Â Â  The principle set out in McKee
has been consistently followed in other cases in which a grantor with no record
title joined his or her spouse in the execution of a deed which purported to
reserve a mineral interest to the grantors and later claimed (or his or her
heirs later claimed) that the reservation created an enforceable property
interest.Â  See Angell v. Bailey, 225 S.W.3d 834, 840 (Tex. App.ÂEl Paso
2007, no pet.); Little v. Linder, 651 S.W.2d 895, 900-01 (Tex. App.ÂTyler 1983, writ refÂd n.r.e.); Canter v. Lindsey, 575 S.W.2d 331, 335
(Tex. Civ. App.ÂEl Paso 1978, writ refÂd n.r.e.); Ryan v. Fort Worth NatÂl
Bank, 433 S.W.2d 2, 7-8 (Tex. Civ. App.ÂAustin 1968, no writ); see also
Joseph W. McKnight, Family Law: Husband and Wife, 38 Sw. L.J. 131, 136 & nn.56-62
(1984).

Â Â Â Â Â Â Â Â Â Â Â  As the court in McKee explained,
ÂThe only way for [a donor spouse] to have made a gift to [his spouse] of an
interest in his separate property would have been by the execution of a deed.Â Â McKee,
362 S.W.2d at 876; accord McKnight, 38 Sw.
L.J. at 136 n.62 (ÂIn order for the husband to have any interest in the
mineral reservation, the wife would have had to convey such interest to him
before conveying the land to a third party.Â).

Â Â Â Â Â Â Â Â Â Â Â  McCuen also cites a memorandum opinion
of this Court in which we addressed the Âwell establishedÂ proposition Âthat when
a husband uses separate property consideration to pay for land acquired during
the marriage and takes title to the land in the name of husband and wife, it is
presumed he intended the interest placed in his wife to be a gift.ÂÂ  Cockerham
v. Cockerham, 527 S.W.2d 162, 168 (Tex. 1975) (cited by Hoover v. Koss,
No. 10-04-00015-CV, 2005 WL 1488070, at *2 (Tex. App.ÂWaco June 22, 2005, no
pet.) (mem. op.)).Â  McCuen argues that this presumption should likewise apply
when a spouse conveys separate property to a third party but reserves an
interest in that property in the name of both spouses.Â  However, we hold that
the presumption does not apply.Â  Here, Paul did not ÂpayÂ any consideration to
reserve the disputed mineral interests.Â  Cf. id.Â  Thus, the presumption
applies only when a spouse uses separate property consideration to acquire a
new interest in real property and takes title to that interest in the name of
both spouses.

Â Â Â Â Â Â Â Â Â Â Â  Applying McKee to the elements
required to establish a parol gift of real property, the reservations of
mineral interests in the deeds do not conclusively establish that Paul made a
gift in praesenti to Mary of any interest in Tract 1 or 2. Â See Dawson,
242 S.W.2d at 192-93; Flores, 225 S.W.3d at 655.

Â Â Â Â Â Â Â Â Â Â Â  McCuen and Ettinger also contend that
these reservations served to memorialize a prior parol gift of one-half of PaulÂs
interest in Tracts 1 and 2 to Mary.Â  The second element for establishing a
parol gift of realty is possession under the gift by the donee with the donorÂs
consent.Â  Id.Â  To prove this element, a plaintiff must show Âactual
possessionÂ of the realty.Â  Powell v. Wiley, 141 Tex. 74, 170 S.W.2d 470,
471 (1943); Hernandez v. Alta Verde Indus., Inc., 666 S.W.2d 499, 503
(Tex. App.ÂSan Antonio 1983, writ refÂd n.r.e.); accord Harris v. Potts,
545 S.W.2d 126, 127 (Tex. 1976) (Hooks v. Bridgewater Ârequires actual
possessionÂ).Â  However, the summary-judgment evidence conclusively establishes
that Paul and Mary lived in Alabama at the time of the alleged gift, and Mary
remained there until her death.Â  Thus, McCuen and Ettinger failed to
conclusively establish that Mary took Âactual possessionÂ of any interest in
Tract 1 or 2.Â  Cf. Natural Gas Pipeline Co. of Am. v. Pool, 124 S.W.3d 188,
192-93 (Tex. 2003) (to establish Âactual possessionÂ of severed oil or gas
interest for limitations title, there must be Âdrilling and production of oil
or gasÂ).

Â Â Â Â Â Â Â Â Â Â Â  Accordingly, we overrule McCuenÂs
third issue and that part of EttingerÂs first issue in which she contends that
Paul made a parol gift to Mary.

Conveyance

Â Â Â Â Â Â Â Â Â Â Â  McCuen contends in his second issue
that the devise of the Johnson County property in PaulÂs will was adeemed
because Paul conveyed the disputed royalty interests to Mary in the 1950 deed
reservations.Â  Ettinger likewise contends as part of her third issue that Paul
conveyed the disputed interests to Mary.Â  However, a grantor with no record
title cannot create title in herself by joining her spouse in the execution of
a deed which purports to reserve a mineral interest to the grantors.Â  See
Angell, 225 S.W.3d at 840; Little, 651 S.W.2d at 900-01; Canter,
575 S.W.2d at 335; Ryan, 433 S.W.2d at 7-8; McKee, 362 S.W.2d at
875-76; see also McKnight, 38 Sw.
L.J. at 136 & nn.56-62.Â  Therefore, we overrule McCuenÂs second
issue and that part of EttingerÂs third issue in which she contends that Paul
conveyed the disputed interests to Mary.

Â 

Â 

PaulÂs Probate Proceedings

Â Â Â Â Â Â Â Â Â Â Â  McCuen contends in his first issue and
Ettinger contends in her first and third issues that Phil, Jr. failed to
conclusively establish that the disputed interests passed to Phil, Sr. under
the terms of PaulÂs will.Â  McCuen and Ettinger rely primarily on: (1) an
affidavit Phil, Sr. filed with the Alabama probate court stating that any
interest Paul had in Tracts 1 and 2 had been disposed of before his death; and
(2) the Alabama courtÂs decree that Mary was PaulÂs sole legatee and devisee of
any property which passed under his will.Â  Phil, Jr. responds that Phil, Sr.
did not disclaim his interest in the subject property, Mary did not inherit the
subject property in the Alabama probate proceedings, and thus, Phil, Sr.
inherited the disputed royalty interests under the terms of PaulÂs will. Â To
resolve these contentions, we must first determine whether to apply Alabama law or Texas law.

Choice of Law

Â Â Â Â Â Â Â Â Â Â Â  When a will has been duly probated in
another state, the judgment of the probate court must be given full faith and
credit in this state.Â  U.S. Const. art. IV, Â§ 1; Holland
v. Jackson, 121 Tex. 1, 37 S.W.2d 726, 727-28 (1931).Â  ÂThe validity of the
judgment is determined by the laws of the state where it was rendered.ÂÂ  Bard
v. Charles R. Myers Ins. Agency, Inc., 839 S.W.2d 791, 795 (Tex. 1992); accord Mindis Metals, Inc. v. Oilfield Motor & Control, Inc., 132
S.W.3d 477, 484 (Tex. App.ÂHouston [14th Dist.] 2004, pet. denied).Â  However, a
party seeking to establish the validity of such a judgment must: (1) file a
timely motion requesting the court to take judicial notice of the applicable
law of the other state, and (2) provide the court with Âsufficient informationÂ
regarding the law to be noticed.Â  See Tex.
R. Evid. 202; Brown v. Lanier Worldwide, Inc., 124 S.W.3d 883, 894
n.20 (Tex. App.ÂHouston [14th Dist.] 2004, no pet.); Pittsburgh Corning
Corp. v. Walters, 1 S.W.3d 759, 769 (Tex. App.ÂCorpus Christi 1999, pet.
denied); Olin Guy Wellborn, III, Judicial Notice Under Article II of the
Texas Rules of Evidence, 19 St.
MaryÂs L.J. 1, 26-27 (1987).Â  Failure to comply with these requirements
results in a presumption that the law of the other state is the same as Texas law.[7]Â 
See Mindis Metals, 132 S.W.3d at 487; Brown, 124 S.W.3d at 894
n.20; Pittsburgh Corning, 1 S.W.3d at 769; Wellborn, 19 St.
MaryÂs L.J. at 27.

Â Â Â Â Â Â Â Â Â Â Â  Here, no party asked the trial court
to take judicial notice of the applicable laws of Alabama, and there is no
indication that the court undertook to do so on its own motion.Â  Therefore, we
will presume that the pertinent law of Alabama is identical to Texas law.Â  Id.

Disclaimer

Â Â Â Â Â Â Â Â Â Â Â  McCuen and Ettinger contend that Phil,
Sr. disclaimed any interests he might have been entitled to under PaulÂs will
by an affidavit Phil, Sr. filed with the Alabama court.

Â Â Â Â Â Â Â Â Â Â Â  Item Three of PaulÂs will provides:

Â Â Â Â Â Â Â Â Â Â Â  I give, devise and bequeath to my
beloved brother, should he survive me or in the event he predeceases me to his
surviving issue, my undivided one-half interest in approximately four hundred
fifty acres of farm land and the equipment located on said farm in Johnson County, Texas.Â  This is the property which I now jointly own with my said brother
Phil Huey.

Â 

Phil, Sr.Âs ÂdisclaimerÂ provides in pertinent
part:

Â Â Â Â Â Â Â Â Â Â Â  That in the last will and testament of
his brother, Paul Huey, certain real property and equipment located thereon in Johnson County, Texas was devised and bequeathed to him.

Â 

Â Â Â Â Â Â Â Â Â Â Â  That he knows of his own knowledge and
participated in the conveyance of said property and equipment by himself and
Paul Huey prior to the death of Paul Huey, and that all of the property covered
by ITEM THREE of the last will and testament of Paul Huey has been disposed of,
prior to Paul HueyÂs death, and that there was no property to pass to him under
the terms of Paul HueyÂs will.

Â 

Â Â Â Â Â Â Â Â Â Â Â  That he does hereby consent to the
final settlement of the estate of Paul Huey by Mary Huey, the sole legatee,
devisee, beneficiary and distributee of all of the property owned by Paul Huey
at his death and passing under the last will and testament of Paul Huey,
deceased.

Â 

Â Â Â Â Â Â Â Â Â Â Â  In MaryÂs petition for final
settlement of the estate, she affirmatively stated, ÂAll of the property
covered by ITEM THREE of the Will had been disposed of by the Decedent prior to
his death and none of that property passed under the terms of the Will.Â

Â Â Â Â Â Â Â Â Â Â Â  The Alabama probate courtÂs decree of
final settlement makes no reference to any property in Johnson County, Texas and declares Mary to have been Âthe sole legatee and devisee of the property passing
under the last will and testament of Paul Huey.Â

Â Â Â Â Â Â Â Â Â Â Â  Section 37A of the Texas Probate Code
provides for a written disclaimer by a beneficiary of any property or interest
he would otherwise inherit.Â  Tex. Prob.
Code Ann. Â§ 37A (Vernon Supp. 2007).Â  Section 37A was first enacted in
1971.[8]Â  See
Act of May 29, 1971, 62d Leg., R.S., ch. 979, Â§ 1, 1971 Tex. Gen. Laws 2954 (amended
1977).Â  The Legislature enacted section 37A at least in part because Texas law
at that time Ârelating to the disclaimer of property under any will of or by
inheritance from a decedent [was] vague and unclear.ÂÂ  Act of May 29, 1971, 62d
Leg., R.S., ch. 979, Â§ 2, 1971 Tex. Gen. Laws at 2956; see also Badouh v.
Hale, 22 S.W.3d 392, 396 (Tex. 2000) (ÂThe Legislature enacted section 37A
to clarify TexasÂs disclaimer law.Â).Â  Nevertheless, a beneficiaryÂs right to
disclaim his or her inheritance has long been recognized in Texas.[9]Â 
 See First City NatÂl Bank of Houston v. Toombs, 431 S.W.2d 404,
406 (Tex. Civ. App.ÂSan Antonio 1968, writ refÂd n.r.e.) (ÂThe right of a
devisee or legatee under a will to decline a devise or bequest in toto is
generally recognized.Â); see also Smith v. Negley, 304 S.W.2d 464, 468
(Tex. Civ. App.ÂAustin 1957, no writ); Torno v. Torno, 95 S.W. 762, 763
(Tex. Civ. App.ÂGalveston 1906, writ refÂd).

Â Â Â Â Â Â Â Â Â Â Â  An annotation on the topic of
disclaimers recognizes that some courts have found particular disclaimers to be
ineffective Âwhere made under a misapprehension as to or in ignorance of [the
beneficiaryÂs] rights or interest accruing [under the will].ÂÂ  C.P. Jhong,
Annotation, What Constitutes or Establishes BeneficiaryÂs Acceptance or
Renunciation of Devise or Bequest, 93 A.L.R.2d 8, 58 (1964).[10]Â 
This approach has support in at least one early Texas decision in which it was
argued that the plaintiff was estopped to claim certain property as the sole
heir of her father because she had elected to take the property under another
relativeÂs will.Â  See Packard v. De Miranda, 146 S.W. 211, 212-13 (Tex.
Civ. App.ÂSan Antonio 1912, writ refÂd).Â  The court rejected this contention
because the plaintiff

was ignorant of the language in which the will and
deeds were written, and ignorant of the facts and circumstances surrounding the
property and its disposal.Â  To hold her in her ignorance and innocence bound as
to an election would be to make a laughing stock of equity and a burlesque of
justice.Â  She could not have made an intelligent choice, if the will had
demanded of her an election, because of her ignorance of the facts in
connection with the property.

Â 

Id. at
215.

Â Â Â Â Â Â Â Â Â Â Â  From these authorities, we conclude
that, to be effective, a disclaimer of an inheritance is enforceable against
the maker only when it has been made with adequate knowledge of that which is
being disclaimed.Â  Cf. Nw. NatÂl Cas. Co. v. Doucette, 817 S.W.2d 396,
400-01 (Tex. App.ÂFort Worth 1991, writ denied) (disclaimer enforceable even though
maker was mistaken about who would inherit disclaimed property as a result of
disclaimer).

Â Â Â Â Â Â Â Â Â Â Â  Here, the disputed royalty interests
were omitted from the administration of PaulÂs probate estate.[11]Â 
In fact, Mary herself stated in the petition for final settlement of PaulÂs
estate that Ânone of [the Johnson County] property passed under the terms of
the WillÂ (which necessarily includes the residuary clause).Â  At most, Phil,
Sr.Âs affidavit reflects a mistaken understanding on his part (shared by Mary)
that Paul did not own any interest in the Johnson County property at the time
of his death.Â  Therefore, we hold that Phil, Sr. did not knowingly disclaim his
inheritance of the disputed royalty interests.

The Probate CourtÂs Judgment

Â Â Â Â Â Â Â Â Â Â Â  McCuen and Ettinger also contend that
the disputed interests passed to Mary at PaulÂs death because the Alabama probate court decreed that Mary was PaulÂs sole legatee and devisee of any property
which passed under his will.

Â Â Â Â Â Â Â Â Â Â Â  The Alabama courtÂs Decree of Final
Settlement provides in pertinent part:

Â Â Â Â Â Â Â Â Â Â Â  And it further appearing to the Court
that Mary Huey is the sole legatee and devisee of the property passing under
the last will and testament of Paul Huey, deceased, and that Mary Huey as
executrix has complied with the terms of said will by paying over and
delivering to herself all of the property and assets in her hands belonging in
the estate except certain stocks and bonds hereinafter described.

Â 

In the next paragraph, the probate court awarded
title to more than 2,500 shares of stock to Mary.Â  The decree does not make a
specific reference to any other property belonging to the estate.

Â Â Â Â Â Â Â Â Â Â Â  A close reading of the petition for
final settlement filed by Mary reveals that the only property she considered to
be in PaulÂs estate at his death was Âmoneys and other personal property.Â

Â Â Â Â Â Â Â Â Â Â Â  Therefore, because Phil, SrÂ.s affidavit
and MaryÂs petition for final settlement both advised the Alabama probate court
that Paul held no ownership interest in the Johnson County property at the time
of his death and because the probate courtÂs decree make no reference to the
Johnson County property, we hold that the disputed royalty interests did not
pass to Mary at PaulÂs death despite her designation as PaulÂs sole legatee and
devisee under the will.

Muniment of Title

Â Â Â Â Â Â Â Â Â Â Â  Ettinger also contends that the filing
of certified copies of the probate documents from PaulÂs estate in the deed
records of Johnson County established title in MaryÂs heirs under section 96 of
the Probate Code.Â  Section 96 does authorize the filing of a certified copy of
a duly probated will and the record of its probate from another state or nation
in the deed records as a muniment of title.Â  See Tex. Prob. Code Ann. Â§ 96 (Vernon 2003); Lane v. Miller
& Vidor Lumber Co., 176 S.W. 100, 103 (Tex. Civ. App.ÂSan Antonio 1915,
writ refÂd); 17 M.K. Woodward, Ernest E.
Smith, III, Ione Stumberg, & W.W. Gibson, Jr., Texas Practice: Probate and
DecedentsÂ Estates Â§ 411 (1971);[12] see
also Jones v. Jones, 301 S.W.2d 310, 314 (Tex. Civ. App.ÂTexarkana 1957, writ
refÂd n.r.e.) (Louisiana will Âwas merely filed for record in the office of the
 County Clerk as a muniment of title and recorded in the deed recordsÂ).

Â Â Â Â Â Â Â Â Â Â Â  BlackÂs Law Dictionary defines
a muniment of title as Â[d]ocumentary evidence of title, such as a deed or a
judgment regarding the ownership of property.ÂÂ  BlackÂs Law Dictionary 1043 (8th ed. 2004).Â  As this Court
has observed, one of the purposes of probating a will as a muniment of title Âis
to provide continuity in the chain of title to estate properties by placing the
will on the public record.ÂÂ  In re Est. of Kurtz, 54 S.W.3d 353, 355 (Tex. App.ÂWaco 2001, no pet.).

Â Â Â Â Â Â Â Â Â Â Â  Although PaulÂs will references the
Johnson County property, Phil, SrÂs affidavit and MaryÂs petition for final
settlement both state that Paul owned no real property in Johnson County at the
time of his death, and the probate decree is silent with respect to the
property at issue.Â  Under these circumstances, the probate record does not Âprovide
continuity in the chain of title.Â Â Thus, we hold that the probate documents
which were filed in the deed records do not constitute a muniment of title.

Omitted Property

Â Â Â Â Â Â Â Â Â Â Â  When any part of the decedentÂs
property is omitted from a will or from the administration of his estate, Texas law has long recognized that an heirship proceeding may be instituted to determine
who lawfully inherited the omitted property.Â  See Tex. Prob. Code Ann. Â§ 48 (Vernon Supp. 2007).[13]Â 
This is in essence what ChesapeakeÂs suit is, even though no party has cited
section 48 or otherwise characterized this as an heirship proceeding.

Â Â Â Â Â Â Â Â Â Â Â  Mary did not acquire any ownership of
the disputed royalty interests by her inclusion in the warranty deeds, but Paul
plainly reserved an undivided 1/16 non-participating royalty interest in Tract
1 and a 1/32 non-participating royalty interest in Tract 2.[14]Â 
At PaulÂs death, Mary and Phil, Sr. apparently failed to take these
reservations in account, and they were not included in the administration of
PaulÂs estate.Â  Despite this oversight on their parts, these interests were
inherited by Phil, Sr. under PaulÂs will.Â  Furthermore, the parties have
stipulated that Phil, Jr. has succeeded to any interest his father held.Â  Thus,
the summary judgment record conclusively establishes that Phil, Sr. inherited
the disputed royalty interests under PaulÂs will and Phil, Jr. presently owns
those interests.

Â Â Â Â Â Â Â Â Â Â Â  Accordingly, we overrule McCuenÂs
first issue and EttingerÂs first and third issues.

Take-Nothing Judgment

Â Â Â Â Â Â Â Â Â Â Â  Chesapeake contends in its first issue
that the court erred by rendering a take-nothing judgment against it.Â  The gist
of ChesapeakeÂs complaint is that it obtained the precise relief it sought,
namely, an adjudication of title to the disputed royalty interests.Â  Thus, Chesapeake contends that it is a Âprevailing partyÂ and should not have suffered a
take-nothing judgment.

Â Â Â Â Â Â Â Â Â Â Â  BlackÂs defines a take-nothing
judgment as Â[a] judgment for the defendant providing that the plaintiff
recover nothing in damages or other relief.ÂÂ  BlackÂs
Law Dictionary at 861.Â  Although it is true that the primary thrust of ChesapeakeÂs suit was to determine ownership of the disputed royalty interests, the trial
court awarded Chesapeake no monetary damages and specifically denied its
request for attorneyÂs fees.Â  Under these circumstances, we cannot say that the
court abused its discretion by rendering judgment that Chesapeake take
nothing.Â  Accordingly, we overrule ChesapeakeÂs first issue.

Royalties Held in Suspense

Â Â Â Â Â Â Â Â Â Â Â  Chesapeake contends in its fifth issue
that the court erred by ordering it to pay all royalty monies held in suspense
to Phil, Jr. and not just those royalty monies attributable to the interests in
dispute in this lawsuit.Â  ChesapeakeÂs complaint raises two sub-issues: (1)
whether Phil, Jr. sought such relief in his summary-judgment motion; and (2) if
so, whether the court improperly ordered Chesapeake to pay more monies to Phil,
Jr. than he is entitled to.

Â Â Â Â Â Â Â Â Â Â Â  In his summary-judgment motion, Phil,
Jr. sought a declaration that he is Âthe sole owner of the disputed two non-participating
royalty interestsÂ and Âsuch other further relief at law or in equity as this
court deems proper.ÂÂ  The trial court declared Phil, Jr. to be the owner of the
disputed interests.

Â Â Â Â Â Â Â Â Â Â Â  The parties filed a Rule 11 agreement
in connection with ChesapeakeÂs interpleader action.Â  In this agreement, the
parties stated that Chesapeake had Âunconditionally tendered the appropriate
funds in the Registry of the CourtÂ and that it would not be necessary for Chesapeake Âto actually deposit any funds into the Registry.ÂÂ  See Heggy v. Am. Trading
Employee Ret. Account Plan, 123 S.W.3d 770, 776 (Tex. App.ÂHouston [14th Dist.] 2003, pet. denied).Â  The parties further agreed that the funds
tendered were those Ârepresenting production attributable to the interests which
are the subject matter of this suit.Â

Â Â Â Â Â Â Â Â Â Â Â  Funds held in suspense in this manner
are for all intents and purposes the same as funds deposited in the registry of
a court.Â  Such funds can be disbursed only by order of the court.Â  See
Eikenburg v. Webb, 880 S.W.2d 781, 782 (Tex. App.ÂHouston [1st Dist.] 1993,
no writ); see also Tex. Loc. GovÂt
Code Ann. Â§ 117.121(a) (Vernon 1999).Â  Therefore, to conclude this
litigation by final judgment, it was incumbent upon the court to decree to whom
the suspended funds should be disbursed.

Â Â Â Â Â Â Â Â Â Â Â  There is nothing in the record to
suggest that Chesapeake held in suspense any funds other than those
attributable to the royalty interests in dispute.Â  In fact, the Rule 11
agreement seems to expressly confirm that these were the only funds held in
suspense.Â  Pursuant to Phil, Jr.Âs summary-judgment motion, the court
determined that he is the sole owner of the disputed interests, and because
that motion included a request for general relief, we cannot say that the court
abused its discretion by ordering Chesapeake to deliver all suspended funds
directly to Phil, Jr.Â  Accordingly, we overrule ChesapeakeÂs fifth issue.

Ad Litem AttorneyÂs Fees

Â Â Â Â Â Â Â Â Â Â Â  ChesapeakeÂs second, third and fourth
issues challenge the courtÂs decision to require Chesapeake to pay the
attorneyÂs fees of the attorney ad litem appointed to represent McCuen.Â  In
particular, Chesapeake contends: (a) the court abused its discretion by
requiring Chesapeake to pay McCuenÂs attorneyÂs fees; (b) there is no evidence
to support the amount of trial attorneyÂs fees awarded in the judgment; and (c)
the court abused its discretion by awarding appellate attorneyÂs fees because
proper notice was not given of the hearing for such fees.

Â Â Â Â Â Â Â Â Â Â Â  Before addressing ChesapeakeÂs issues,
we first note that the trial court was required by Rule of Civil Procedure 244
to pay McCuenÂs counsel Âa reasonable fee for his servicesÂ and to tax those
fees Âas part of the costs.ÂÂ  Tex. R.
Civ. P. 244;[15] Cahill
v. Lyda, 826 S.W.2d 932, 933 (Tex. 1992) (per curiam).

Â Â Â Â Â Â Â Â Â Â Â  In its second issue, Chesapeake
contends that the court abused its discretion by requiring Chesapeake to pay
McCuenÂs attorneyÂs fees because: (1) the court failed to state good cause for
awarding attorneyÂs fees to a non-prevailing party as required by Rules of
Civil Procedure 131 and 141; and (2) McCuen did not cite the Uniform
Declaratory Judgments Act (Chapter 37 of the Civil Practice and Remedies Code)
in his summary-judgment motion as a basis for an attorneyÂs fee award.

Â Â Â Â Â Â Â Â Â Â Â  Read together, Rules 131 and 141 in
essence require a court to state on the record why it has chosen to allow a
non-prevailing party to recover costs (including attorneyÂs fees).[16]
Â Tex. R. Civ. P. 131, 141; see
FurrÂs Supermarkets, Inc. v. Bethune, 53 S.W.3d 375, 376-77 (Tex. 2001); Marion v. Davis, 106 S.W.3d 860, 868-69 (Tex. App.ÂDallas 2003, pet.
denied).Â  The courts of appeals are divided on the question of whether this
Âgood cause requirementÂ applies in declaratory judgment actions.Â  Compare
Marion, 106 S.W.3d at 868-69 (under Rules 131 and 141, award of attorneyÂs
fees to non-prevailing party in declaratory judgment action must be supported
by statement of good cause on the record), with W. Beach Marina, Ltd. v.
Erdeljac, 94 S.W.3d 248, 270 (Tex. App.ÂAustin 2002, no pet.) (good cause
requirement of Rules 131 and 141 does not apply in declaratory judgment action).Â 
Nevertheless, because Chesapeake did not raise this complaint in the trial
court, it has not preserved this issue for appellate review.[17]

Â Â Â Â Â Â Â Â Â Â  Chesapeake also complains
that the attorneyÂs fees award cannot be based on the Uniform Declaratory
Judgments Act because McCuen did not cite this statute as a basis for relief in
his summary-judgment motion. Â However, McCuen did not request an award of
attorneyÂs fees in his summary-judgment motion.Â  Rather, he filed a pretrial
motion for attorneyÂs fees.[18]Â  At
the conclusion of the summary-judgment hearing, McCuen offered in evidence
counselÂs affidavit providing an itemized listing of his trial attorneyÂs
fees.Â  ChesapeakeÂs counsel stated on the record, Âwhatever the Court
determines to be the appropriate amount of attorneyÂs fees I wonÂt object to
that.ÂÂ  ChesapeakeÂs counsel and EttingerÂs counsel both affirmatively stated
that they had no objection to the admission in evidence of the affidavit, and
the court admitted it without objection.

Â Â Â Â Â Â Â Â Â Â  From the record, it appears
that the merits of the lawsuit were resolved by summary judgment, while the
attorneyÂs fees issues were resolved in a bench trial.Â  See, e.g., Doncaster
v. Hernaiz, 161 S.W.3d 594, 600-01 (Tex. App.ÂSan Antonio 2005, no pet.); Cadle
Co. v. Harvey, 46 S.W.3d 282, 284 (Tex. App.ÂFort Worth 2001, pet.
denied).Â  During the course of this brief trial, EttingerÂs counsel reminded
the court that this suit was brought under the Declaratory Judgments Act which
authorizes a court to (in counselÂs words) Âapportion attorneyÂs fees as the
Court sees fit.ÂÂ  And in a post-judgment hearing, ChesapeakeÂs counsel referred
to the Declaratory Judgments Act as the applicable law in determining whether
to award appellate attorneyÂs fees to McCuen.

Â Â Â Â Â Â Â Â Â Â  Because the court awarded
the attorneyÂs fees in a bench trial and not as part of the summary-judgment
proceedings, it is irrelevant that McCuen did not include a request for
attorneyÂs fees in his summary-judgment motion.Â  Chesapeake brought this suit
under the Declaratory Judgments Act, and thus the trial court was authorized to
award such reasonable and necessary attorneyÂs fees as the court deemed
Âequitable and just.ÂÂ  Tex. Civ. Prac.
& Rem. Code Ann. Â§ 37.009 (Vernon 1997); see GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d
305, 311-12 (Tex. 2006).

Â Â Â Â Â Â Â Â Â Â  For these reasons, we
overrule ChesapeakeÂs second issue.

Â Â Â Â Â Â Â Â Â Â Â  Chesapeake contends in its third issue
that there is no evidence to support the amount of trial attorneyÂs fees
awarded in the judgment.Â  However, McCuen offered in evidence counselÂs
affidavit providing an itemized listing of his trial attorneyÂs fees.Â  The
affidavit recites that the attorney ad litem had incurred $14,748.75 in trial
attorneyÂs fees on McCuenÂs behalf.Â  The judgment requires Chesapeake to pay $14,748.75
in trial attorneyÂs fees.

Â Â Â Â Â Â Â Â Â Â Â  McCuen offered documentary evidence to
support his request for trial attorneyÂs fees, and Chesapeake stated on the
record that it had Âno objectionÂ to this evidence and that it would not object
to Âwhatever the Court determine[d] to be the appropriate amount of attorneyÂs
fees.ÂÂ  This evidence is such as would Âenable [a] reasonable and fair-minded [trier
of fact] to reach the verdict under review.ÂÂ  See City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); see also Matis v. Golden, 228 S.W.3d 301,
305 (Tex. App.ÂWaco 2007, no pet.) (applying Keller no-evidence standard
to findings made in bench trial); Keith v. Keith, 221 S.W.3d 156, 172
(Tex. App.ÂHouston [1st Dist.] 2006, no pet.) (rejecting no-evidence challenge
to attorneyÂs fee award where opposing party stated on record Âthat she had no
issue with [counselÂs] credentials, rate, or amount of time spent on the caseÂ).Â 
Accordingly, we overrule ChesapeakeÂs third issue.

Â Â Â Â Â Â Â Â Â Â Â  Chesapeake contends in its fourth
issue that the court erred by granting the attorney ad litemÂs appellate
attorneyÂs fees because proper notice of the hearing on those fees was not
given.Â  Before we address the notice issue, however, we must determine whether
the trial court had jurisdiction to award appellate attorneyÂs fees because the
motion seeking such fees was filed more than thirty days after the initial
judgment was signed.Â  See In re Dickason, 987 S.W.2d 570, 571 (Tex. 1998) (per curiam) (order granting new trial after expiration of plenary power is void
for want of jurisdiction); Custom Corporates, Inc. v. Sec. Storage, Inc.,
207 S.W.3d 835, 838 (Tex. App.ÂHouston [14th Dist.] 2006, no pet.) (ÂOrders
issued outside of a trial courtÂs plenary power are typically voidÂ).

Â Â Â Â Â Â Â Â Â Â Â  The trial court signed its ÂFinal
Summary JudgmentÂ on September 8, 2006.Â  McCuen filed a motion for new trial on
October 5, complaining in particular of the courtÂs rejection of his parol gift
theory.Â  On Tuesday, October 10,[19]
McCuen filed a Motion for Leave to File Supplemental Evidence to Summary
Judgment and Motion to Modify.Â  In this motion, McCuen sought leave of court to
present additional evidence regarding his appellate attorneyÂs fees and a
modification of the judgment to award those fees.Â  Insofar as this motion
constituted a motion to modify the judgment, it was untimely under Rule of
Civil Procedure 329b because it was filed thirty-two days after the date the
judgment was signed.Â  See Tex. R.
Civ. P. 329b(a), (g).Â  Insofar as this motion constituted a motion to
present additional evidence under Rule of Civil Procedure 270, that rule
provides in pertinent part a trial court may grant a motion to reopen Âat any
time.ÂÂ  Id. 270.Â  And there are cases affirming a trial courtÂs decision
to reopen the evidence even after rendition of judgment.Â  See, e.g.,
McCarthy v. George, 623 S.W.2d 772, 776 (Tex. App.ÂFort Worth 1981, writ
refÂd n.r.e.) (evidence reopened 33 days after trial); Harrison v. Bailey,
260 S.W.2d 702, 704-05 (Tex. Civ. App.ÂEastland 1953, no writ) (evidence
reopened at unspecified time after rendition of judgment).

Â Â Â Â Â Â Â Â Â Â Â  McCuenÂs timely-filed motion for new
trial extended the trial courtÂs plenary power. Â See Tex. R. Civ. P. 329b(e); In re J.L.,
163 S.W.3d 79, 82 (Tex. 2005).Â  As the Supreme Court has explained, a trial
court may in its discretion consider the grounds raised in an untimely motion
to modify if the courtÂs plenary power has already been extended by a timely-filed
post-judgment motion.Â  See Moritz v. Preiss, 121 S.W.3d 715, 720 (Tex. 2003).

If the trial court ignores the tardy motion, it is
ineffectual for any purpose.Â  The court, however, may look to the motion for
guidance in the exercise of its inherent power and acting before its plenary
power has expired, may grant a [modification]; but if the court denies [the
requested modification], the belated motion is a nullity and supplies no basis
for consideration upon appeal of grounds which were required to be set forth in
a timely motion.

Â 

Id.
(quoting Kalteyer v. Sneed, 837 S.W.2d 848, 851 (Tex. App.ÂAustin 1992,
no writ)).[20]

Â Â Â Â Â Â Â Â Â Â Â  Here, the trial court granted McCuenÂs
motion for leave to file additional evidence, which we have characterized as a
motion to reopen under Rule 270.

In determining whether to permit additional
evidence under Rule 270, a court should consider: (1) the movantÂs diligence in
obtaining the additional evidence; (2) the decisiveness of this evidence; (3)
whether the reception of the evidence could cause any undue delay; and (4)
whether the granting of the motion could cause any injustice.Â  Naguib v.
Naguib, 137 S.W.3d 367, 373 (Tex. App.ÂDallas 2004, pet. denied); Lopez
v. Lopez, 55 S.W.3d 194, 201 (Tex. App.ÂCorpus Christi 2001, no pet.).Â  ÂThe
trial court should exercise its discretion liberally Âin the interest of
permitting both sides to fully develop the case in the interest of justice.ÂÂÂ  Lopez,
55 S.W.3d at 201 (quoting Word of Faith World Outreach Ctr. Church, Inc. v.
Oechsner, 669 S.W.2d 364, 367 (Tex. App.ÂDallas 1984, no writ)).

Â 

Saunders v. Lee, 180 S.W.3d 742, 745 (Tex. App.ÂWaco 2005, no pet.).

Â Â Â Â Â Â Â Â Â Â Â  It can be argued that McCuen failed to
exercise due diligence in presenting evidence regarding appellate attorneyÂs
fees.Â  However, the remaining three factors support the courtÂs decision to
permit additional evidence.Â  Therefore, we cannot say that the court abused its
discretion by permitting McCuen to present additional evidence on this issue,
and because McCuenÂs motion for new trial was timely filed, the court was still
acting within its plenary power when it permitted McCuen to present additional
evidence.[21]

Â Â Â Â Â Â Â Â Â Â Â  Chesapeake argues that McCuen failed
to give twenty-one daysÂ notice of the hearing on his request for appellate
attorneyÂs fees as required by Rule of Civil Procedure 166a for
summary-judgment hearings.Â  See Tex.
R. Civ. P. 166a(c).Â  Chesapeake also contends that McCuenÂs notice does
not comply with Rule 21a because it does not reflect that the other parties
were notified of the hearing.Â  Id. 21a.

Â Â Â Â Â Â Â Â Â Â Â  We have already explained that the
court awarded McCuenÂs attorneyÂs fees during the course of a bench trial and
not as part of the summary-judgment proceedings.Â  Therefore, the 21-day notice
requirement of Rule 166a(c) does not apply.Â  More importantly, a party must
object to a lack of notice in the trial court to preserve that issue for
appellate review.Â  See Tex. R.
App. P. 33.1(a)(1); Stallworth v. Stallworth, 201 S.W.3d 338, 346
(Tex. App.ÂDallas 2006, no pet.); Emmett Props., Inc. v. Halliburton Energy
Servs., Inc., 167 S.W.3d 365, 372-73 (Tex. App.ÂHouston [14th Dist.] 2005,
pet. denied).Â  Chesapeake did not object to any failure on McCuenÂs part to
give proper notice.Â  Accordingly, we overrule ChesapeakeÂs fourth issue.

EttingerÂs AttorneyÂs Fees

Â Â Â Â Â Â Â Â Â Â Â  Ettinger contends in her fourth issue
that the court abused its discretion by denying her request for attorneyÂs fees
because: (1) as demonstrated by the issues presented, she should have been one
of the prevailing parties; (2) it is undisputed that she incurred attorneyÂs
fees; (3) the court awarded McCuenÂs attorneyÂs fees; and (4) Phil, Jr. has
caused Ettinger to incur attorneyÂs fees by his pursuit of the disputed royalty
interests, Âeven though he acknowledged in his affidavit that Mary Huey owned
the royalty interests.Â

Â Â Â Â Â Â Â Â Â Â Â  Regarding the first contention, we
have already determined that EttingerÂs issues are without merit, and thus she
is not a prevailing party.Â  Regarding the fourth contention, Ettinger
mischaracterizes the statements contained in Phil, Jr.Âs affidavit.Â  Phil, Jr.
stated in one paragraph of the affidavit that Âthe two brothers and their wives
together sold the 210-acre ÂWest FarmÂ to [the Dunsons].ÂÂ  In the next
paragraph, Phil, Jr. states, ÂIn the conveyance to the Dunsons, again Mary
co-signed with her husband as grantors, even though this ÂWest FarmÂ was PaulÂs
separate propertyÂ  .Â  .Â  .Â  .Â  I donÂt know why Mary was asked to sign.ÂÂ 
Nowhere in the affidavit does Phil, Jr. state that Mary owned the disputed
interests.

Â Â Â Â Â Â Â Â Â Â Â  Under the Declaratory Judgments Act, a
court may award Âreasonable and necessary attorneyÂs fees as are equitable and
just.ÂÂ  Tex. Civ. Prac. & Rem. Code
Ann. Â§ 37.009; Ridge Oil Co. v. Guinn Invs., Inc., 148 S.W.3d 143,
161 (Tex. 2004).Â  We assume without deciding that the attorneyÂs fees sought by
Ettinger are Âreasonable and necessary.ÂÂ  Thus, the sole issue for decision is
whether the court abused its discretion by determining that it would not be Âequitable
and justÂ to award Ettinger her attorneyÂs fees.Â  See Ridge Oil, 148
S.W.3d at 161 (Âthe equitable and just requirements are questions of law for
the trial court to decideÂ) (citing Bocquet v. Herring, 972 S.W.2d 19,
21 (Tex. 1998)).

Â Â Â Â Â Â Â Â Â Â Â  Here, the court had before it four
parties (and/or groups of parties) represented by counsel.Â  Three of those
parties retained their own counsel to represent them in this proceeding, and
there is nothing in the record to indicate that any of these parties is
indigent.Â  The court, as required by Rule 244, ordered that McCuenÂs counsel be
paid his attorneyÂs fees and taxed those fees as part of the costs.Â  See
Tex. R. Civ. P. 244; Cahill,
826 S.W.2d at 933.Â  The court may have determined that every other party to the
litigation should pay their own attorneyÂs fees, but the court had no
discretion with regard to McCuenÂs attorneyÂs fees.Â  From the record, we cannot
say that the court abused its discretion by denying EttingerÂs request for
attorneyÂs fees.Â  Accordingly, we overrule EttingerÂs fourth issue.

Conclusion

The trial court properly determined that Phil, Jr.
holds title to the disputed royalty interests because his father inherited
those interests from Paul under the terms of PaulÂs will.Â  The trial court did
not abuse its discretion by requiring Chesapeake to pay the ad litemÂs
attorneyÂs fees, nor did the court abuse its discretion by denying EttingerÂs
request for attorneyÂs fees.Â  Therefore, we affirm the judgment.

Â 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed April 30, 2008

[CV06]









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Much of the background facts
come from a joint stipulation the parties made.





[2]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The residuary devisees named
in MaryÂs will are: Joseph W. McCuen (9%), Donald H. and Ellen Hill McCuen
(9%), Edwin and Louise McCuen Buck (9%), Edna McCuen (9%), Phil, Jr. (9%),
Phil, Sr. and wife Homerette or the survivor of them (15%), Mildred Schultz
McCuen (4%), Frederick H. McCuen (3%), John Timothy McCuen (3%), Margaret
McCuen Klopfenstein (3%), Lois McCuen Baldwin (3%), Phyllis McCuen Powers (3%),
Patricia McCuen (3%), Mary Ellen McCuen Stieler (3%), Donald H. McCuen, II
(3%), Douglas Buck (3%), Sarah Buck Lawrence (3%), Evelyn Olson (3%), Joan
Elizabeth Hooker (0.75%), Nellie S. Borntraeger (0.75%), Mary U. Stansel
(0.75%), and Minnie Gobel (0.75%).

Â 





[3]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The Ettinger defendants
include: Sarah Ettinger, Douglas Buck, Carol McCuen, Margaret McCuen Precilio,
Phyllis McCuen Powers, and Mary Ann McCuen Culberson.

Â 





[4]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The McCuen defendants include:
Joseph W. McCuen, Donald H. McCuen, Ellen McCuen, Louise McCuen Buck, Edwin
Buck, Edna McCuen, Mildred Schultz McCuen, Frederick H. McCuen, John Timothy
McCuen, Margaret McCuen Klopfenstein, Lois McCuen Baldwin, Patricia McCuen,
Mary Ellen McCuen Stieler, Donald H. McCuen, II, Evelyn Olson, Nellie S.
Borntraeger, Mary U. Stansel, Minnie Gobel, and their heirs, successors, and
assigns.





[5]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Because no preservation is
required, we need not determine whether the trial court implicitly overruled
EttingerÂs objection.Â  Cf. Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.,
127 S.W.3d 235, 240-41 (Tex. App.ÂWaco 2003, no pet.).





[6]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The former article 1288 of the
Revised Civil Statutes of 1925 provided:

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No estate of
inheritance or freehold, or for a term of more than one year, in lands and
tenements, shall be conveyed from one to another, unless the conveyance be
declared by an instrument in writing, subscribed and delivered by the party
disposing of the same, or by his agent thereunto authorized by writing.

Â 

Act effective Sept. 1, 1925, 39th Leg., R.S., Â§ 1, art. 1288
(repealed 1983) (current version at Tex.
Prop. Code Ann. Â§ 5.021 (Vernon 2003)).

Â 

Â 





[7]
Â Â Â Â Â Â Â Â Â Â Â Â Â  A trial court may in its
discretion sua sponte take judicial notice of the other stateÂs law, but
it is not required to do so.Â  See Tex.
R. Evid. 202; Pittsburgh Corning Corp. v. Walters, 1 S.W.3d 759,
769 (Tex. App.ÂCorpus Christi 1999, pet. denied); Olin Guy Wellborn, III, Judicial
Notice Under Article II of the Texas Rules of Evidence, 19 St. MaryÂs L.J. 1, 27 (1987).





[8]
Â Â Â Â Â Â Â Â Â Â Â Â Â  In its present form, section
37A applies to only those disclaimers made Âon or after September 1, 1977.Â Â Tex. Prob. Code Ann. Â§ 37A(a) (Vernon Supp. 2007).Â  This particular date was apparently selected to coincide with the 1977
amendments to section 37A and has been retained ever since.Â  See Act of
May 23, 1977, 65th Leg., R.S., ch. 769, Â§ 1, 1977 Tex. Gen. Laws 1918 (amended
1979).

Â 





[9]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The same holds true in Alabama.Â  See, e.g., Trustees of Cumberland Univ. v. Caldwell, 203 Ala. 590, 84 So.
846, 851 (1919) (op. on rehÂg).

Â 





[10]
Â Â Â Â Â Â Â Â Â Â Â  The Supreme Court cited the
Jhong annotation as authority in Badouh.Â  See Badouh v. Hale, 22
S.W.3d 392, 396 (Tex. 2000).

Â 





[11]
Â Â Â Â Â Â Â Â Â Â Â  Even if these interests had been
disclaimed by Phil, Sr. as McCuen and Ettinger claim, they would have passed to
Phil, Jr. as Phil, Sr.Âs sole Âsurviving issueÂ under the terms of PaulÂs
will.Â  See Tex. Prob. Code Ann. Â§ 37A(c) (Vernon Supp. 2007) (ÂUnless
the decedentÂs will provides otherwise, the property subject to the disclaimer
shall pass as if the person disclaiming or on whose behalf a disclaimer is made
had predeceased the decedentÂ).





[12]
Â Â Â Â Â Â Â Â Â Â Â  Although Professors Woodward and
Smith are generally regarded as the authors of this treatise, they acknowledge
in the preface that Ione Stumberg and W.W. Gibson, Jr. each authored one
chapter.Â  17 M.K. Woodward & Ernest
E. Smith, III, Preface to
Texas Practice: Probate and DecedentsÂ Estates v (1971).Â  We acknowledge
StumbergÂs authorship because she wrote Chapter 13 on foreign wills.Â  Id. ch. 13, at 317.





[13]
Â Â Â Â Â Â Â Â Â Â Â  See also Texas Probate
Code, 54th Leg., R.S., ch. 55, Â§ 48, 1955 Tex. Gen. Laws 88, 104 (amended 1971)
(current version at Tex. Prob. Code Ann.
Â§ 48 (Vernon Supp. 2007)); Wells v. Gray, 241 S.W.2d 183, 185 (Tex. Civ.
App.ÂSan Antonio 1951, writ refÂd).Â  It should also be noted that probate
courts ordinarily have virtually exclusive jurisdiction to determine heirship
disputes because a determination of heirship is statutorily included among
those matters ÂappertainingÂ or ÂincidentÂ to an estate.Â  See Tex. Prob. Code Ann. Â§ 5A (Vernon Supp. 2007).Â  However, Â[i]n a non-probate matter, the district court may assume
jurisdiction and determine the heirs of the decedent as long as there is no
probate proceeding pending in the county court.ÂÂ  Jansen v. Fitzpatrick,
14 S.W.3d 426, 432 (Tex. App.ÂHouston [14th Dist.] 2000, no pet.).

Â  





[14]
Â Â Â Â Â Â Â Â Â Â Â  When Paul conveyed his undivided
1/2 interest in Tract 1 to Phil, Sr., Paul reserved to himself an undivided
1/16 non-participating royalty interest in Tract 1.Â  Conversely, at the time of
the conveyance of Tract 2 to the Dunsons, Paul and Phil, Sr. each owned an
undivided 1/2 interest in Tract 1, and they collectively reserved unto
themselves an undivided 1/16 non-participating royalty interest.Â  Thus, Paul
and Phil, Sr. each held an undivided 1/32 non-participating royalty interest in
Tract 2 after the Dunson conveyance.





[15]
Â Â Â Â Â Â Â Â Â Â Â  Rule 244 provides:

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Where service has been made by
publication, and no answer has been filed nor appearance entered within the
prescribed time, the court shall appoint an attorney to defend the suit in
behalf of the defendant, and judgment shall be rendered as in other cases; but,
in every such case a statement of the evidence, approved and signed by the
judge, shall be filed with the papers of the cause as a part of the record
thereof.Â  The court shall allow such attorney a reasonable fee for his
services, to be taxed as part of the costs.

Â 

Tex. R. Civ. P. 244.

Â 





[16]
Â Â Â Â Â Â Â Â  Rule 131 provides, ÂThe successful party to a suit shall
recover of his adversary all costs incurred therein, except where otherwise
provided.ÂÂ  Tex. R. Civ. P. 131.Â 
Rule 141 provides, ÂThe court may, for good cause, to be stated on the record,
adjudge the costs otherwise than as provided by law or these rules.ÂÂ  Id. 141.

Â 





[17]
Â Â Â Â Â Â Â Â Â Â Â  ChesapeakeÂs motion for new
trial complains in pertinent part that Â[t]he trial court improperly assessed
Plaintiff Chesapeake Exploration Limited Partnership will all attorney ad litem
costs.ÂÂ  This is, at best, a general objection to the attorneyÂs fee award.Â  In
any event, it is not sufficiently specific to preserve this issue for appellate
review.Â  See Tex. R. App. P. 33.1(a)(1);
Gerdes v. Kennamer, 155 S.W.3d 523, 532 (Tex. App.ÂCorpus Christi 2004,
pet. denied) (Âthe allegations in a motion for new trial must be sufficiently
specific to enable the trial court to understand what the movant alleges was
error.Â).

Â 





[18]
Â Â Â Â Â Â Â Â Â Â Â  In similar fashion, Chesapeake filed a motion for attorneyÂs fees 10 days after the summary-judgment hearing.Â  Chesapeake supported this motion with an affidavit of counsel filed on the same date the
court signed the initial judgment, which the court designated as its ÂFinal
Summary Judgment.ÂÂ  Conversely, Ettinger sought attorneyÂs fees in her
summary-judgment motion, and Phil, Jr. Âreserve[d] the rightÂ to pursue
appellate attorneyÂs fees in his motion.

Â 





[19]
Â Â Â Â Â Â Â Â Â Â Â  The certificate of service in
this pleading bears the same date so there is nothing to suggest that the
Âmailbox ruleÂ would apply.Â  See Tex.
R. Civ. P. 5.





[20]
Â Â Â Â Â Â Â Â Â Â Â  The original quotation is from
McDonaldÂs Texas Civil Practice.Â  See Kalteyer v. Sneed, 837
S.W.2d 848, 851 (Tex. App.ÂAustin 1992, no writ) (quoting Homart Dev. Co. v.
Blanton, 755 S.W.2d 158, 160 (Tex. App.ÂHouston [1st Dist.] 1988, orig.
proceeding) (quoting 4 Roy W. McDonald,
Texas Civil Practice Â§ 18.06.02, at 287 (Frank W. Elliott ed., rev. ed.
1984))); see also 5 Roy W.
McDonald & Elaine A. Carlson, Texas Civil Practice Â§ 28.10, at 291
(2d ed. 1999).

Â 





[21]
Â Â Â Â Â Â Â Â Â Â Â  The court signed both the order
granting McCuen leave to file additional evidence and the ÂAmended Final
Summary JudgmentÂ on November 14, 2006, well within 75 days after the September
8 judgment was signed.Â  See Lane Bank Equip. Co. v. Smith So. Equip., Inc.,
10 S.W.3d 308, 310 (Tex. 2000) (timely-filed motion for new trial extends
courtÂs plenary power up to 75 days); Malone v. Hampton, 182 S.W.3d 465,
468 (Tex. App.ÂDallas 2006, no pet.) (same).

Â